UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| AMADOR RIVERA,<br><br>Petitioner,<br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | 3: 10 - CV - 1970 (CSH) |
|---|---|

**RULING ON PETITIONER'S MOTION PURSUANT TO 28 U.S.C. § 2255 TO VACATE, SET ASIDE OR CORRECT SENTENCE**

Petitioner Amador Rivera moves, *pro se*, for an order vacating, setting aside, or correcting his sentence pursuant to 28 U.S.C. § 2255. For the following reasons, Petitioner Rivera's motion (Doc. No. 1) is **denied**.

## I. BACKGROUND

In 1995, Rivera was arrested and charged, along with many other individuals, following an investigation into the Los Solidos gang in Connecticut. On July 26, 1996, in the United States District Court for the District of Connecticut, after a trial before Judge Peter C. Dorsey, a jury convicted Rivera on charges of racketeering (Count 1–18 U.S.C. § 1962(c)), conspiracy to commit racketeering (Count 2–18 U.S.C. § 1962(d)), conspiracy to commit murder in aid of racketeering (Count 10–18 U.S.C. § 1959(a)(5)), and conspiracy to distribute controlled substances (Count 34–21 U.S.C. § 846). He was sentenced to three concurrent terms of life imprisonment.

### A. Appeals

Rivera appealed both his conviction and the sentence imposed. On September 14, 1999, the

Second Circuit, in a Summary Order, affirmed the conviction and sentence, *United States of America v. Rivera, et al*., 192 F.3d 81, 83 n.1 (2d Cir. 1999), and the mandate issued on October 15, 2009, (3:94 cr 223(CSH), Doc. No. 2119). Rivera then sought a writ of certiorari from the United States Supreme Court, which was denied. *Rivera v. United States*, 528 U.S. 1130 (2000).

In 2001, Rivera filed a motion in this Court for habeas corpus relief under 28 U.S.C. § 2255, alleging that his sentences violated the Supreme Court's 2000 ruling in *Apprendi v. New Jersey,* 530 U.S. 466 (2000), in that "the life sentences imposed [upon him] violate[d] *Apprendi* as requisite facts pertinent to the sentence were not found beyond a reasonable doubt by the jury."[1] *See Rivera v. United States*, No. 01-cv-0076 (PCD), 2003 WL 22359252, at *2 (D. Conn. Jan. 14, 2003). Judge Dorsey agreed and, on January 15, 2003, modified Rivera's sentences so that he would serve 20 years on Count One (RICO) concurrent with 10 years on Count Ten (VCAR Conspiracy to Murder Latin Kings), and 20 years on Count Two (RICO Conspiracy) concurrent with 20 years on Count Thirty-Four (Conspiracy to Distribute Cocaine and Cocaine Base). 2003 WL 22359252, at *3. Counts One and Ten were ordered to be served consecutively to Counts Two and Thirty-Four for a total effective sentence of 40 years imprisonment. *Id.*

**B. <u>Rivera's Administrative Remedies</u>**

In March 2007, Rivera discovered errors in his Bureau of Prisons ("BOP") file regarding his date of offense, Social Security number, and FBI number. Specifically, he discovered that both his Social Security and FBI numbers were incorrect and that his records listed an inaccurate arrest for

[1] In *Apprendi v. New Jersey,* the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490.

larceny. Rivera brought these errors to the attention of BOP staff. BOP officials at the Regional level informed Rivera that his fingerprints were submitted to the FBI to resolve the issue of possible mistaken identity. The FBI acknowledged that Rivera's FBI number had been incorrectly reported and corrected that error, along with other incorrect information. The district court was then informed of the error so that its records could be corrected. BOP further confirmed with the United States Marshals Service that based on fingerprints and photo comparisons, Rivera was the same individual held in the United States Marshals' custody prior to sentencing and commitment. Based on their investigation, BOP officials informed Rivera that, despite the errors in his records, he was properly incarcerated pursuant to the judgment order from the district court. BOP officials also told Rivera that any challenge to his sentence or claim that he was actually innocent of the charges must be addressed to the sentencing court.

### C. Rivera's Appeal to the District Court for the Eastern District of Kentucky

Rivera was not satisfied with the administrative result he received from the BOP. He contended that he had been confused with one *Armondo* not *Amador* Rivera, and was innocent of the Connecticut charges. To that end, in January 2008, Rivera filed a habeas action under 28 U.S.C. § 2241 in the Eastern District of Kentucky against the warden of the Kentucky prison where Rivera was confined.[2] The case was assigned to District Judge Karen K. Caldwell, whose thorough and well-reasoned opinion is available at *Rivera v. Rios*, No. 7:08-CV-010 (KKC), 2008 WL 973095 (E.D. Ky. April 8, 2008).

In that habeas action before Judge Caldwell, Rivera claimed that in respect of the underlying

---

[2] Section 2241 provides habeas relief if the prisoner shows that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

criminal charges against him, the FBI, the government, the courts and the BOP "all have imposed an identity upon him which is not his; he was convicted and is serving a sentence for a crime of which he is actually innocent." 2008 WL 973095 , at *1. That claim was based upon the inaccuracies in Rivera's earlier records, relating to Rivera but containing erroneous references to "Armondo Rivera." Judge Caldwell wrote:

> Meanwhile, also during 2007, Rivera was in the process of exhausting the BOP administrative remedies so as to bring the instant "actual innocence" or "mistaken identity" claim to this Court, in the district in which he is in custody, pursuant to 28 U.S.C. § 2241. Having completed the administrative process, on January 15, 2008, Petitioner filed the Section 2241 action herein, raising a claim *which he has apparently not raised earlier*.

2008 WL 973095, at *2 (emphasis added). In context, the judge's phrase "not raised earlier" noted that his claim of misidentity/innocence was not raised in a prior judicial proceeding.

Judge Caldwell, acting in accordance with her Court's procedures, *sua sponte* denied Rivera's habeas petition and dismissed his action. She concluded that: (1) any erroneous information in BOP, FBI, or other court records had been corrected;[3] (2) Rivera had not demonstrated that he was in custody in violation of the Constitution or federal law; and (3) because

---

[3] With respect to his allegation regarding mistaken identity, Judge Caldwell found Rivera's arguments and evidence unpersuasive, as follows:

> Rivera's main contention is that there has been a case of mistaken identity, *i.e.*, that he is not the Rivera whom the district court tried and sentenced and whom the BOP has now wrongly imprisoned for almost 12 years. Moreover, although he characterizes his attachments as documents showing that he is not the one convicted, mistaken identity is not supported by the allegations or the documents. The Petitioner's submissions show only inconsistencies as to certain data going back to 1996, before either his appeal or subsequent motions to the trial court. Why did he not bring the identity issue to any of these proceedings?

2008 WL 973095, at *4.

he had previously challenged his conviction pursuant to 28 U.S.C. § 2255 in the District of Connecticut before Judge Dorsey, Rivera could not challenge his Connecticut conviction again without obtaining permission from the appellate court. Judge Caldwell also determined that Rivera could not obtain relief under section 2255's savings clause because he failed to either show how the section 2255 remedy was inadequate or to identify any change in the law showing that he was actually innocent.

**D. Rivera's *Bivens* Action**

In 2009, Rivera filed a *Bivens* action in this Court against defendants Jeffrey Rovelli, Harrell Watts, Hector Rios, and Lynn Harper, alleging that these individual defendants, all federal employees and agents, violated his federal rights by either intentionally or negligently creating or failing to correct inaccurate or false records about his identity.[4] *Rivera v. Doe et. al.*, No. 3:09CV07(CSH), 2011 WL 2222306 (D. Conn. June 7, 2011). Just as in Rivera's prior habeas suit in the Eastern District of Kentucky, the case concerned a claim of mistaken identity, and, on June 7, 2011, this Court dismissed the action as barred by "issue preclusion" under the doctrine of collateral estoppel.[5]

---

[4]*See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (creating a cause of action against federal officials personally for damages arising from violations of the United States Constitution). *See also Davis v. United States*, 430 F. Supp.2d 67, 77 (D.Conn. 2006) ("A *Bivens* action is a judicially-created remedy designed to provide individuals with a cause of action against federal officials who have violated their constitutional rights.").

[5] As this Court explained, "the doctrine of collateral estoppel, provides that once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." 2011 WL 2222306, at *5. "Rivera raised identical issues in his prior litigation . . . [i] n his section 2241 action before the Eastern District of Kentucky" by asserting "claims of inconsistencies in his prison records, mistaken identity, as well as actual innocence and constitutional violations." *Id.* (citing

Furthermore, the Court found that "even assuming that Rivera ha[d] brought issues in this suit that were not fully litigated before the Eastern District of Kentucky, Rivera [wa]s still barred from bringing any claim that call[ed] into question the validity of his conviction." *Id.*, at *6. Under the United States Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994), an inmate, such as Rivera, "may not bring a civil rights action if success in that action would necessarily call into question the validity of his conviction unless that conviction first has been reversed on direct appeal, expunged by executive order, or called into question by a federal court's issuance of writ of habeas corpus." 2011 WL 2222306, at *6. Because Rivera had failed to show that his conviction had been called into question, his claims based on mistaken identity and actual innocence were barred by *Heck*. *Id.*

In response to the Court's ruling, Rivera filed motions to amend or alter the judgment and for reconsideration. *Rivera v. Doe*, No. 3:09CV07(CSH), Doc. Nos. 54 & 57. Both motions were denied. *Id.,* Doc. Nos. 55 & 58.

## II. DISCUSSION

In his present habeas petition, Rivera argues that his sentence should be vacated or corrected on three separate grounds: (1) actual innocence and mistaken identity; (2) the Government improperly used prior offense conduct to enhance his sentence; and (3) the Court improperly ordered his sentences to run consecutively rather than concurrently.

---

*Rivera v. Rios*, 2008 WL 973095, at *4–5). Moreover, Judge Caldwell "dismissed Rivera's previous suit in a written opinion that thoroughly addresse[d] each of his claims." 2011 WL 2222306, at *6. Because Rivera had "a full and fair opportunity to litigate the [misidentity] issue" and "resolution of the issue was necessary to support a valid and final judgment on the merits," Rivera's claim was barred from further litigation before this Court by "issue preclusion." *Id.*

A. **Actual Innocence Claim**

Rivera contends, notwithstanding his conviction after a trial, that the Government arrested the wrong person and has imposed on him the identity of Armondo Rivera. As set forth *supra*, this is not the first time that Rivera has raised his claim of mistaken identity in court. Rivera's claims that the Government imposed on him the identity of Armondo Rivera were fully litigated before and decided by Judge Caldwell in the Eastern District of Kentucky in 2007 and addressed for a second time by this Court in a *Bivens* action in 2011. *See Rivera v. Rios*, No. 7:08-CV-010 (KKC), 2008 WL 973095 (E.D. Ky. April 8, 2008); *Rivera v. Doe et. al.*, No. 3:09CV07(CSH), 2011 WL 2222306 (D. Conn. June 7, 2011). This Court held then, as it does now, that all claims by Rivera that the wrong identity was imposed upon him are barred by the doctrine of collateral estoppel. Rivera presented this issue to Judge Caldwell, it was fully litigated and decided by her, and the decision on that issue was necessary to support a valid and final judgment on the merits. In sum, the issue of mistaken identity remains precluded by collateral estoppel.

Moreover, even if Rivera's mistaken identity claim were not barred, it would fail on the merits. While it is undisputed that prior to their correction, errors existed in Rivera's BOP records and that in certain of those records he was mistakenly identified as *Armondo* rather than *Amador*, Rivera has produced no evidence that any error existed in his records *prior to his conviction*. He can thus hardly claim that there was an issue with respect to his identity before he was convicted.

Furthermore, upon conviction, Rivera failed to raise a claim of mistaken identity prior to his sentencing. For example, he raised no objection of misidentity when reviewing his personal history in his Pre-sentencing Report ("PSR"), despite the fact that he was expressly given the opportunity to correct any inaccuracies in that report and in fact did object to certain details regarding the level

of his involvement in the drug conspiracy. Moreover, Rivera did not raise the issue of his identity in any of his direct appeals. Without any evidence supporting Rivera's claim of actual innocence based on mistaken identity and in light of ample evidence refuting it, the Court must reject this claim.

**B. <u>Sentence Enhancement Based on Prior Offense Conduct</u>**

Rivera claims that his sentence was improperly enhanced pursuant to 21 U.S.C. § 851 for two reasons: (1) the Government did not provide him with notice that they intended to use his prior convictions to enhance his sentence; and (2) the Government cannot prove that his 1990 state court conviction, in violation of Connecticut General Statute § 21a-277a, was a "controlled substance offense" that could support a sentence enhancement under the United States Sentencing Guidelines. For the reasons set forth below, Rivera's claims that his sentence was improperly enhanced lack merit.

Rivera first argues that his prior convictions could not be used to enhance his sentence because he was not notified prior to trial that these convictions would be considered in determining his sentence. The record, however, reflects that the Government filed an Information to Establish Prior Convictions as to Amador Rivera on April 13, 1996, more than two weeks prior to the start of Rivera's jury trial. *See USA v. Rivera, et al.,* No. 3:94-cr-00223 (CSH), Doc. No. 1156. Information regarding his prior convictions and their effect on calculating his criminal history category also appeared in Rivera's PSR, which he was given prior to sentencing.

Rivera next argues that his 1990 state court drug conviction could not be used to enhance his sentence because the Government did not prove that the 1990 offense conduct involved a "controlled

substance offense" as that term is defined in the Guidelines. This argument also fails primarily for the reason that Rivera's sentence was *not* enhanced by his 1990 state court drug conviction. The PSR reflects that Rivera's offense level for the crimes of which he was convicted at his federal trial was Level 43. At an offense level of 43, the Guideline sentencing range is life imprisonment *regardless of the offender's criminal history category*. Therefore, for the purposes of calculating Rivera's Guideline sentencing range, his prior criminal convictions were of no consequence. The sentencing court also did not take Rivera's criminal history into account when applying statutory provisions to determine the amended sentence Rivera received on January 15, 2003; rather, the court used the statutory provisions applicable to a first-time offender to determine his sentence.[6] 2003 WL 22359252, at *3.

**C. <u>United States Sentencing Guideline § 5G1.2(d)</u>**

Rivera finally argues that the sentencing court improperly applied section 5G1.2(d) of the United States Sentencing Guidelines to run his sentences consecutively rather than concurrently. On January 15, 2003, when Judge Dorsey modified Rivera's sentence, he decided that Rivera would serve 20 years on Count 1 (RICO) to be served concurrent with 10 years on Count 10 (VCAR conspiracy), and 20 years on Count 2 (RICO conspiracy) to be served concurrent with 20 years on Count 34 (conspiracy to distribute cocaine and cocaine base in violation of 21 U.S.C. §§ 846 and 841(a)(1)). *See Rivera v. United States*, No. 3:01-cv-0076 (PCD), 2003 WL 22359252, at *3 (D. Conn. Jan. 14, 2003). Counts 1 and 10 were further ordered to be served consecutively to Counts

---

[6] Had the Court used Rivera's prior criminal convictions to enhance his sentence, under 21 U.S.C. § 841(b)(1)(C), he would have been eligible for a thirty year maximum sentence rather than the twenty year maximum that the Court applied.

2 and 34 for a total effective sentence of 40 years. *Id.* Rivera claims the Court lacked authority to have his sentence for Counts 1 and 10 run consecutively to the sentence for Counts 2 and 34. This claim is without merit.

Section 5G1.2(d) states that "[i]f a sentence on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively . . . ." The commentary to section 5G1.2(d) explains that although "[u]sually, at least one of the counts will have a statutory maximum adequate to permit imposition of the total punishment as the sentence on that count . . . [i]f no count carries an adequate statutory maximum, consecutive sentences are to be imposed to the extent necessary to achieve the total punishment." As discussed *supra,* Rivera's Guidelines range called for life imprisonment. However, when Rivera received his amended judgment in 2003, rather than basing this amended sentence on the Guidelines range, the sentencing court imposed sentences based on the statutory maximum terms of the counts. *See* 2003 WL 22359252, at *3; *see also generally* No. 3:94-cr-00223 (CSH), Doc. No. 2533 ("Amended Judgment"), at 36-42. In light of the Guideline range of life imprisonment, the Guideline sentence would have been 70 years with every count running consecutively pursuant to section 5G1.2(d). Therefore, although not explicitly stated as such in the Amended Judgment, the 40-year sentence that Judge Dorsey imposed was a substantial downward departure in Rivera's favor from the Guideline sentence.

## III. <u>CONCLUSION</u>

For all of the foregoing reasons, Rivera's habeas petition (Doc. No. 1) is **DENIED**. Because Rivera has failed to make a substantial showing of the denial of a constitutional right, any appeal

from this Order would not be taken in good faith and a certificate of appealability shall not issue. The Clerk is directed to close the case.

    It is SO ORDERED.

Dated: New Haven, Connecticut
       July 25, 2012

                                        */s/Charles S. Haight, Jr.*
                                        Charles S. Haight, Jr.
                                        Senior United States District Judge